# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 3:25-mc-00751 |
| A Silver Hewlett Packard Laptop and a Black Zalman T6 | ) | |
| ATX Mid Tower, as described in Attachment A | ) | |
| | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

a Silver Hewlett Packard Laptop and a Black Zalman T6 ATX Mid Tower, as described in Attachment A hereto,

located in the _____ District of _____ Oregon _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The information and items set forth in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2) | Receipt of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession and Access with Intent to View Child Pornography |

The application is based on these facts:

See affidavit which is attached hereto and incorporated herein by this reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Anthony Alcobia, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Telephone at 8:30 _____ a.m./p̶.m̶. _____ *(specify reliable electronic means).*

Date: 06/30/2025

City and state: Portland, Oregon

_____
*Judge's signature*

JOLIE A. RUSSO, United States Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:          AFFIDAVIT OF ANTHONY ALCOBIA

### Affidavit in Support of an Application Under Rule 41
### for a Warrant to Search and Seize Evidence Including Digital Evidence

I, Anthony Alcobia, being duly sworn, do hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent employed by Homeland Security Investigations (HSI) and

have been so employed since January 2019.   I am currently assigned to work out of the

Deschutes County Digital Forensics Lab (DFL) and, specifically, tasked to investigate violation

of laws linked to Internet Crimes Against Children (ICAC) for HSI Bend.   The DFL includes

members of the Deschutes County Sheriff's Department, Bend Police Department, Redmond

Police Department, Oregon Department of Justice, Federal Bureau of Investigation, Oregon State

Police, U.S. Marshals, U.S. Attorney's Office and the Deschutes District Attorney's Office.   I

am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. During my

tenure with HSI, I have participated in the investigation of cases involving drug smuggling, bulk

cash smuggling, weapons trafficking, human smuggling, commercial fraud, fugitive operations,

worksite enforcement, homicide, and crimes against children.   I have served numerous arrest

warrants and participated in the service of search warrants.   I have participated in numerous

investigations during the course of which I have (a) conducted physical and wire surveillance;

(b) executed search warrants at locations where contraband has been found; (c) reviewed and

analyzed numerous taped conversations discussing criminal activity; (d) debriefed cooperating

witnesses and other confidential sources; (e) monitored wiretapped conversations and reviewed

line sheets prepared by wiretap monitors; and (f) searched electronic evidence.   As a result of

my training and experience, I am familiar with the techniques and methods of operation used by

individuals involved in criminal activity to conceal their activities from detection by law

enforcement authorities.

2.       I submit this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the search and examination of a

Silver Hewlett Packard Laptop (Clackamas County Sheriff's Office Case Item 25-008987-15)

(hereinafter "**DEVICE 1**") and a Black Zalman T6 ATX Mid Tower (Clackamas County

Sheriff's Office Case Item 25-008987-16) (hereinafter "**DEVICE 2**"), which are currently stored,

in law enforcement possession, at Deschutes County Digital Forensics Laboratory, as described

in Attachment A hereto, and the extraction of electronically stored information from the

**DEVICE 1** and **DEVICE 2**, as described in Attachment B hereto.   As set forth below, I have

probable cause to believe and do believe that the items set forth in Attachment B constitute

evidence contraband, fruits, and instrumentalities of violations of *Title 18 U.S.C. § 2252A(a)(2) –*

Receipt of Child Pornography, and *18 U.S.C § 2252A(a)(5)(B)* – Possession of and/or Access

with Intent to View Child Pornography, collectively referred to as the **Target Offenses**.

3.       This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.   The facts

set forth in this affidavit are based on my own personal knowledge, knowledge obtained from

other individuals during my participation in this investigation, including other law enforcement

officers, interviews of witnesses, a review of records related to this investigation,

communications with others who have knowledge of the events and circumstances described

herein, and information gained through my training and experience.

**Affidavit of Anthony Alcobia**                                                    **Page  2**

**Applicable Law**

4.      *Title 18, United States Code, Section 2252A(a)(2)* makes it a crime to knowingly receive or distribute any child pornography using any means or facility of interstate or foreign commerce, or that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

5.      *Title 18, United States Code, Section 2252A(a)(5)(B)* makes it a crime to knowingly possess or access with intent to view child pornography that has been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

6.      The term "child pornography" is defined in 18 U.S.C. § 2256(8).   "Child pornography," as defined in 18 U.S.C. § 2256(8), includes any visual depiction of a child under the age of 18 years engaging in sexually explicit conduct.   "Sexually explicit conduct" is defined in 18 U.S.C. § 2256(2) and includes sexual intercourse, whether genital-genital, oral-genital, anal-genital, or oral-anal, whether between members of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; and the lascivious exhibition of the genitals, anus, or pubic area of any person.

**Statement of Probable Cause**

7.      Target Jacob JOHNSON (DOB: XX-XX-1991) was the subject of a 2018 HSI investigation of federal child pornography offenses.   The investigation targeted individuals who had paid in Bitcoin to receive child pornography through a specific website (the "Target Website"), which was used to host and distribute images and videos of child sexual exploitation

**Affidavit of Anthony Alcobia**                                                                                **Page  3**

material (CSAM).[1] Users of the Target Website could create a free account by providing a username and password, which allowed them to preview videos available on the website. In order to download videos from the Target Website, users had to spend "points," which they could earn by (1) uploading CSAM to the Target Website, (2) referring new users to the Target Website, (3) paying for either an unlimited subscription or a set number of "points" using Bitcoin. Through HSI's investigation, law enforcement agents learned that the Target Website appeared to assign each user who purchases access to content through the website a unique Bitcoin address to which the user can send funds.

8.　　In March of 2018, foreign law enforcement executed a search warrant and seized the Target Website's server and associated electronic storage media from the home of the website's administrator. Foreign law enforcement then provided a forensic image of the seized devices to U.S. law enforcement, which obtained a warrant to review the forensic image. That image contained over 120,000 videos hosted on the Target Website, which appeared to consist entirely of CSAM, as well as customer data for the users of the website. The customer data generally identified which user was associated with which Bitcoin payment to the Target Website and included download data that showed a user'. A review of a sample of Bitcoin payments to the Target Website, cross-referenced against the user ID and download data from the seized server, revealed that each payment to the Target Website resulted in the user downloading at least one video from the website.

---

[1] While the Target Website may have hosted some images depicting exclusively adults, the overwhelming majority of images observed by law enforcement agents who accessed the Target website in late 2017 and early 2018 were CSAM. The upload page on the Target Website stated: "Do not upload adult porn."

**Affidavit of Anthony Alcobia**　　　　　　　　　　　　　　　　　　　　**Page  4**

9.      During the investigation of the Target Website and its users, JOHNSON was identified as having purchased Bitcoins and used them to access the Target Website.   A response to a subpoena to the U.S. BTC Exchange revealed a Bitcoin account created in late 2016 that included the following identifiers:

Name: Jacob Johnson

Email: biochemjake@gmail.com

Address: 1959 SW Canyon Drive, Redmond, OR 97756

Date of Birth: XX/XX/1991 [JOHNSON's birthdate]

The Bitcoin account was associated with a Bank of the Cascades Mastercard in the name of Jacob T. Johnson.

10.      JOHNSON has been required to register as a sex offender since at least 2014 following his conviction for Attempted Sexual Abuse in the First Degree.   According to investigation reports from Redmond Police Department related to JOHNSON's conviction, the case involved JOHNSON molesting a seven-year-old victim by rubbing her vagina with both his hand and his penis.   On his sex offender registration in March of 2016, JOHNSON reported his address as 1959 SW Canyon Drive, Redmond, OR.

11.      Between December 29, 2016, and January 27, 2018, JOHNSON's Bitcoin wallet engaged in two transactions with Bitcoin addresses associated with the Target Website. The first transaction occurred on or about December 29, 2016, for approximately 0.05 Bitcoin.   The second transaction occurred on or about January 28, 2018, for approximately 0.006 Bitcoin.

12.      HSI investigators identified approximately 20 videos that JOHNSON downloaded from the Target Website, which contained child pornography.   Many of the videos have file

**Affidavit of Anthony Alcobia**                                                                                  **Page 5**

names that reference the age of the victims depicted in the video and the types of sexual abuse inflicted on them.

13.    On December 6, 2018, a search warrant issued by the Deschutes County Circuit Court was executed at JOHNSON's then-current residence.   Several digital devices were seized from the residence.   JOHNSON was not arrested at that time.

14.    On December 13, 2018, a Detective with the Deschutes County Sheriff's Office forensically reviewed the contents of a cell phone that was seized from JOHSON during the search warrant.   On the phone, the Detective located a database which tracks media on the device itself and on external storage connected to the device, including file names, file sizes, and the duration of videos.   The database contained information indicating that an external storage device had been connected to the phone on August 25, 2018.   The database also contained the name and location of thumbnail images created as "preview" images for some of the videos. The Detective compared the information in this database, including the thumbnail images, with the information provided by HSI about the videos JOHNSON downloaded from the Target Website.   The Detective found that at least ten of the CSAM videos reported by HSI were present on the external storage device that had been connected to the phone.   The Detective also found thumbnails that depicted the sexual abuse of children that were not included in the information provided by HSI.

15.    Specifically, one of the thumbnails the Detective found on the phone depicted a prepubescent female child, naked from the waist down, lying on her back with her legs spread apart and elevated and her vagina and anus exposed.   This thumbnail appeared to be a still image from a full video reported by HSI as a file that JOHNSON had downloaded from the

**Affidavit of Anthony Alcobia**                                                    **Page 6**

Target Website. The name of the video was "Little girl loves dogs fxxk_webcam_Part02_ (part01_ID_624727).mp4." Another thumbnail depicted an erect penis in the mouth of a prepubescent female child. This thumbnail appeared to be a still image from a full video reported by HSI as a file that JOHNSON had downloaded from the Target Website. The name of the video was "231055_20162017.mp4."

16.    While the investigation and review of his electronic devices were ongoing, JOHNSON stopped going to work and moved out of his residence without updating his sex offender registration as required. In February of 2019, JOHNSON was indicted in Deschutes County for 12 counts of Encouraging Child Sexual Abuse in the First Degree and another 12 counts of Encouraging Child Sexual Abuse in the Second Degree, and law enforcement officers attempted to execute an arrest warrant on those charges. However, they were unable to locate JOHNSON and his whereabouts remained unknown for years.

17.    On May 28, 2025, I became aware of the arrest of JOHNSON in Clackamas County, Oregon. JOHNSON was arrested on the outstanding state warrant. According to Clackamas County police reports, JOHNSON has been living under the assumed identity of "Shae Jamison" for at least the duration of his relationship with his girlfriend, who ultimately reported him to the police after discovering JOHNSON's true identity and learning that he was an out-of-compliance sex offender. JOHNSON was located and arrested at his residence at 9250 SE 242nd Ave, Damascus, OR 97089.

18.    JOHNSON's girlfriend told police that she and JOHNSON dated, on and off, for the past year. She lived with JOHNSON approximately 4-5 days a week at the residence located at 9250 SE 242nd Ave, Damascus, OR 97089. She knew JOHNSON by a different identity

**Affidavit of Anthony Alcobia**                                                        **Page 7**

("Shae Jamison") for the year prior. By happenstance, she discovered JOHNSON had numerous fake identities and learned his real identity.   She also learned there was a warrant out for JOHNSON's arrest. On her own accord, she collected multiple items that she believed might be relevant to crimes JOHNSON possibly committed and shared them with law enforcement. These items included **DEVICE 1** and **DEVICE 2**. She never saw CSAM on JOHNSON's computers, but she had concerns regarding how "secretive" JOHNSON was about what was stored on them. She provided Clackamas County Sheriff's Office (CCSO) consent to enter her and JOHNSON's shared residence.

19.    During his arrest, law enforcement seized 14 forged documents that JOHNSON had apparently used to conceal his true identity. The arrest report authored by CCSO stated that investigators found 4 fake identities and 14 forged documents that JOHNSON used and/or possessed.   During the arrest, police seized the following documents from JOHNSON:

- Identity 1 Documents - Shae R Jamison IL Driver's License (x3) and Social Security Card 1

- Identity 2 Documents - Joshua T Mitchell IL Driver's License (x2) and Social Security Card 2

- Identity 3 Documents - Ryan S Jamison IL Driver's License (x2) and Social Security Card 3

- Identity 4 Documents - Brandon Kelly Lindner - Social Security Card 4 (x4)

20.    On June 27, 2025, the Honorable Youlee Yim You signed a federal search warrant, case number 3:25-mc-745, authorizing a search of **Device 1** and **Device 2** for evidence of violations of 18 U.S.C. § 1028, related to the use or possession of fraudulent identification

**Affidavit of Anthony Alcobia**                                                    **Page  8**

documents.   That same day, during a forensic preview of **Device 2**, a Detective with the

Deschutes County Sheriff's Office Digital Forensics Laboratory (DFL) discovered 4 images

associated with the "VLC player" program on the device that were determined to be CSAM.

The DFL informed me of the discovery and described the CSAM images as depicting an

apparent female toddler.   One image showed a penis inserted into the toddler's anus.

Following the discovery of CSAM on **Device 2**, the search of both Devices was immediately

stopped for the purpose of applying for this warrant.

      21.     I know, based on my training and experience, and based on conversations I have

had with others who investigate child exploitation offenses, that people who have a sexual

interest in children, including persons who collect and trade in child pornography, often receive

sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies

they may have viewing children engaged in sexual activity or in sexually suggestive poses, such

as in person, in photographs, or other visual media, or from literature describing such activity.

They may also use such images and videos to lower the inhibitions of children who they wish to

sexually abuse.   Such individuals may seek out vulnerable children online and in-person. Such

persons often maintain their collections of child pornography in safe, secure, and private

locations, such as their residence or vehicle, and on computers and digital storage media or in

cloud-based online storage under their direct control.   Such persons often maintain their

collections, which are considered prized possessions, for long periods of time, and prefer not to

be without their collections for any prolonged period.

      22.     I also know from my training and experience that many people who download

child pornography from the internet, and those who collect child pornography, frequently save

**Affidavit of Anthony Alcobia**           **Page 9**

images and videos of child pornography on their computers and/or transfer copies to other computers and storage media, including cloud storage accounts, external hard drives, thumb drives, flash drives, SD cards, and CDs or DVDs.   Moreover, it is common in child pornography investigations to find child pornography on multiple devices and/or storage media located in suspects' homes, rather than on a single device.

23.     As with most digital technology, communications made from a computer are often saved or stored on that computer.   Storing this information can be intentional, for example, by saving an email as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.   Digital information can also be retained unintentionally.   Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.   In addition to electronic communications, a computer user's Internet activities generally leave traces in the computer's web cache and internet history files.   A computer forensic examiner often can recover evidence that shows whether a computer contains file-sharing software, when and how the computer was sharing files, and some of the files that were uploaded, downloaded, or viewed.   Such information is often maintained indefinitely until overwritten by other data.   Accordingly, evidence of the Target Offenses is likely to be found on **DEVICE 1** and **DEVICE 2**.

24.     **DEVICE 1** and **DEVICE 2** are currently in the lawful possession of the Deschutes County Digital Forensics Lab.   They came into HSI and the DFL's possession in the following way: an HSI Task Force Officer received them from Clackamas County Sheriff's Office.

**Affidavit of Anthony Alcobia**                                                    **Page  10**

25.     The **DEVICES** are currently in storage at 63333 US-20, Bend, OR 97703.   In my training and experience, I know that the **DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **DEVICES** first came into the possession of the CCSO and DFL.

126.     Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.     *Digital camera*.   A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.   Digital cameras use a variety of fixed and removable storage media to store their recorded images.   Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.   Removable storage media include various types of flash memory cards or miniature hard drives.   This storage media can contain any digital data, including data unrelated to photographs or videos.

      b.     *Storage medium*.   A storage medium is any physical object upon which computer data can be recorded.   Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

      c.     *Internet*.   The Internet is a global network of computers and other electronic devices that communicate with each other.   Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27.     Based on my training, experience, and research, I know that the **DEVICE 1** and **DEVICE 2** have capabilities that allow them to serve as storage media and to connect to the

**Affidavit of Anthony Alcobia**                                                     **Page  11**

Internet, including through email and social media applications and through a web browser. When used in conjunction with a webcam or integrated camera, they can also serve as a digital camera. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

28.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.   Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.   This information can sometimes be recovered with forensics tools.

29.    There is probable cause to believe that things that were once stored on the **DEVICES** will still be stored there because, based on my knowledge, training, and experience, I know:

a.    Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet.   Electronic files downloaded to a storage medium can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using forensic tools.   When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.   Therefore, deleted files or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

**Affidavit of Anthony Alcobia**                                    **Page  12**

b.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.   To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task.   However, it is technically possible to delete this information.

c.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

30.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant but also forensic evidence that establishes how the **DEVICES** were used, the purpose of their use, who used them, and when.   There is probable cause to believe that this forensic electronic evidence will be on the **DEVICES** because, based on my knowledge, training, and experience, I know:

a.     Data on the **DEVICES** can provide evidence of a file that was once on the **DEVICES** but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).   Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.   Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.   Operating systems can record additional information, such as the attachment of

**Affidavit of Anthony Alcobia**                                                              **Page  13**

peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.   Computer file systems can record information about the dates files were created and the sequence in which they were created.

        b.     Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the device at a relevant time.   Further, forensic evidence on a device can show how and when the device was accessed or used.   Such "timeline" information allows the forensic analyst and investigators to understand the chronological context of access, use, and events relating to the crime under investigation.   This "timeline" information may tend to either inculpate or exculpate the device user.   Last, forensic evidence on a device may provide relevant insight into the device user's state of mind as it relates to the offense under investigation.   For example, information on a device may indicate the user's motive and intent to commit a crime (e.g., relevant web searches occurring before a crime indicating a plan to commit the same), consciousness of guilt (e.g., running a "wiping program" to destroy evidence on the device or password protecting or encrypting such evidence in an effort to conceal it from law enforcement), or knowledge that certain information is stored on a computer (e.g., logs indicating that the incriminating information was accessed with a particular program).

**Affidavit of Anthony Alcobia**                                                                                    **Page  14**

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process.   Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.   Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.   For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

30.     *Nature of examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICES** consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **DEVICES** to human inspection in order to determine whether they contain evidence described by the warrant.

**Affidavit of Anthony Alcobia**                                          **Page  15**

31.     The initial examination of the **DEVICES** will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant.   If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.   The government shall complete this review within 180 days of the date of execution of the warrant.   If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

32.     If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the **DEVICES** or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court.   Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

33.     If an examination is conducted, and it is determined that the **DEVICES** do not contain any data falling within the ambit of the warrant, the government will return the **DEVICES** to their owner within a reasonable period of time following the search and will seal any image of the **DEVICES**, absent further authorization from the Court.

34.     If the **DEVICES** contain evidence, fruits, contraband, or are an instrumentality of a crime, the government may retain the **DEVICES** as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the **DEVICES** and/or the data contained therein.

**Affidavit of Anthony Alcobia**                                                                 **Page  16**

35.     The government will retain a forensic image of the **DEVICES** for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

36.     *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**Conclusion**

37.     Based on the foregoing, I have probable cause to believe, and I do believe, that **DEVICE 1** and **DEVICE 2** described in Attachment A contain evidence, contraband, fruits, and instrumentalities of violations of *Title 18 U.S.C. § 2252A(a)(2)* – Receipt of Child Pornography, and *18 U.S.C § 2252A(a)(5)(B)* – Possession of and/or Access with Intent to View Child Pornography, as set forth in Attachment B.   I therefore request that the Court issue a warrant authorizing a search of the **DEVICE 1** and **DEVICE 2** as described in Attachment A for the items listed in Attachment B and the seizure and examination of any such items found.

27.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney (AUSA) Mira Chernick.   I was informed that it is AUSA Mira Chernick's opinion that

**Affidavit of Anthony Alcobia**                                    **Page  17**

the affidavit and application are legally and factually sufficient to establish probable cause to

support the issuance of the requested warrant.

_By phone pursuant to Fed. R. Crim. P. 4.1_
Anthony Alcobia
Special Agent HSI


Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at

8:30_____ a.m./p.m. on June 30\_\_\_\_\_, 2025.


_____
HONORABLE JOLIE A. RUSSO
United States Magistrate Judge


**Affidavit of Anthony Alcobia**                    **Page 18**

**ATTACHMENT A**

**Property to Be Searched**

The property to be searched is a Silver Hewlett Packard Laptop and a Black Zalman T6

ATX Mid Tower, which are currently located on the premises of the Deschutes County Digital

Forensics Laboratory at 63333 W. Hwy 20, Bend, OR 97703.

**ATTACHMENT B**

**Items to Be Seized**

1.     All records on the **Subject Devices** described in Attachment A that relate to violations of *Title 18 U.S.C. § 2252A(a)(2)* – Receipt of Child Pornography, and *18 U.S.C § 2252A(a)(5)(B)* – Possession of and/or Access with Intent to View Child Pornography, collectively referred to as the **Target Offenses**, including:

   a.   Any records, documents, or materials, including correspondence, that pertain to any account, record, data, file, any other social media application or cloud-based storage, or any other business that can facilitate the **Target Offenses**.

   b.   Any records, documents, or materials, including any communications or messages that pertain to any account, record, data, or any other internet-based chat application / video that can facilitate the **Target Offenses**.

   c.   Any records, documents, or materials, including GPS location data, messages, calendar schedules, work schedule, and other data, that would identify the location of the digital device or the user of the digital device at a specific moment in time (for the purposes of comparing it when sexually explicit videos were made or where the user was located when they received the images/videos).

   d.   Any records, documents, or materials, including correspondence, that pertain to the production, transportation, distribution, receipt, or possession of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

e.  All originals and copies (physical or digital) of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

f.  Any motion pictures or digital video clips of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; video recordings which are self-produced and pertain to sexually explicit images of minors; or video recordings of minors which may assist in the location of minor victims of child exploitation or child abuse.

g.  Any records, documents, or materials which include offers to transmit, through interstate commerce by any means (including by computer), any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

h.  Any records, documents, or materials relating to the production, reproduction, receipt, shipment, trade, purchase, or a transaction of any kind involving the transmission, through interstate commerce (including by computer), of any visual depiction of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

i.  Any records, documents, or materials naming or identifying minors visually depicted while engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

j.  Any records of internet usage, including records containing screen names, usernames, and e-mail addresses, and identities assumed for the purposes of

communication on the internet. These records include billing and subscriber

records, chat room logs, e-mail messages, and include electronic files in a

computer and on other data storage media, including CDs or DVDs.

k.   Any records, documents, or materials referring or pertaining to communications

with others, whether in person, by telephone, or online, for the purpose of

distributing or transporting child pornography, including chat logs, call logs,

address book or contact list entries, and digital images or videos sent or received.

l.   Any records, documents, or materials, including correspondence, that could assist

in identifying the user of a particular cell phone, computer, or other digital device

at a specific moment in time.

m.   Information or evidence of any websites visited, photographs, videos, images,

reports, definitions, stories, books, music, lyrics, emails, videos, messages, and or

notes associated with child pornography or those who collect, disseminate, or

trade in child pornography.

As used above, the terms "records," "documents," "programs," "applications," or

"materials" include records, documents, programs, applications or materials created, modified or

stored in any form including digital or electronic form.

**Search Procedure**

2.   The examination of the device may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the device to human inspection in order to determine whether it is evidence

described by the warrant.

3.      The initial examination of the device will be performed within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If the government needs additional time to conduct this review, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant. The government shall complete this review within 180 days of the date of execution of the warrant. If the government needs additional time to complete this review, it may seek an extension of the time period from the Court.

4.      If, at the conclusion of the examination, law enforcement personnel determine that particular files or file folders on the device or image do not contain any data falling within the scope of the warrant, they will not search or examine those files or folders further without authorization from the Court. Law enforcement personnel may continue to examine files or data falling within the purview of the warrant, as well as data within the operating system, file system, software application, etc., relating to files or data that fall within the scope of the warrant, through the conclusion of the case.

5.      If an examination is conducted, and it is determined that the device does not contain any data falling within the ambit of the warrant, the government will return the device to its owner within a reasonable period of time following the search and will seal any image of the device, absent further authorization from the Court.

6.      If the device contains evidence, fruits, contraband, or is an instrumentality of a crime, the government may retain the device as evidence, fruits, contraband, or an instrumentality of a crime or to commence forfeiture proceedings against the device and/or the data contained therein.

7.     The government will retain a forensic image of the device for a number of reasons, including proving the authenticity of evidence to be used at trial, responding to questions regarding the corruption of data, establishing the chain of custody of data, refuting claims of fabricating, tampering, or destroying data, and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.